IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

PETER AGOH,                          §
                                     §
            Plaintiff,               §
                                     §
VS.                                  §    CIVIL ACTION NO. H-12-1398
                                     §
HYATT CORPORATION d/b/a HYATT        §
REGENCY HOUSTON,                     §
                                     §
            Defendant                §

## OPINION AND ORDER OF PARTIAL DISMISSAL AND SUMMARY JUDGMENT

Pending before the Court in the above referenced cause, alleging racial and age discrimination in employment ending in Plaintiff Peter Agoh's termination, grounded in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Texas Commission on Human Rights Act ("TCHRA"), Texas Labor Code, § 21.051, *et seq.*, and 42 U.S.C. §§ 1983 and 1985, is (1) Defendant Hyatt Corporation's ("Hyatt's") motion for summary judgment (instrument #7).

### Standard of Review

Summary judgment under Federal Rule of Civil Procedure 56(c) is appropriate when, viewing the evidence in the light most favorable to the nonmovant, the court determines that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  A dispute of material fact is "genuine" if the evidence would allow a reasonable jury to

find in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Initially the movant bears the burden of identifying those portions of the pleadings and discovery in the record that it finds demonstrate the absence of a genuine issue of material fact on which movant bears the burden of proof at trial; a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 885 (1990); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431 (5th Cir. 1998).

If the movant meets its burden and points out an absence of evidence to prove an essential element of the nonmovant's case on which the nonmovant bears the burden of proof at trial, the nonmovant must then present competent summary judgment evidence to support the essential elements of its claim and to demonstrate that there is a genuine issue of material fact for trial. *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d 698, 712 (5th Cir. 1994).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmovant may not rely merely on allegations, denials in a pleading or unsubstantiated assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause(s) of action. *Morris v. Covan World Wide Moving, Inc.*, 144

F.3d 377, 380 (5th Cir. 1998).  Conclusory allegations unsupported by evidence will not preclude summary judgment.  *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 713; *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  "'[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . .'"  *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990), *quoting Anderson v. Liberty Lobby, Inc.*. 477 U.S. 242, 247-48 (1986).  "Nor is the 'mere scintilla of evidence' sufficient; 'there must be evidence on which the jury could reasonably find for the plaintiff.'"  *Id., quoting Liberty Lobby*, 477 U.S. at 252.  The Fifth Circuit requires the nonmovant to submit "'significant probative evidence.'"  *Id.*, *quoting In re Municipal Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1978), and *citing Fischbach & Moore, Inc. v. Cajun Electric Power Co-Op.*, 799 F.2d 194, 197 (5th Cir. 1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999), *citing Celotex*, 477 U.S.  at 322, and *Liberty Lobby*, 477 U.S. at 249-50.

The court must consider all evidence and draw all inferences from the factual record in the light most favorable to the nonmovant.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *National Ass'n of Gov't Employees v. City Pub. Serv. Board*, 40 F.3d at 712-13.

**Allegations in Plaintiff's Complaint (#1)**

In a brief, bare-bones complaint, Plaintiff Peter Agoh ("Plaintiff" or "Agoh"), an African American male over forty years of age at relevant times, was employed by Hyatt for more than thirty years, from December 15, 1980 until February 4, 2011, when he alleges that he was wrongfully terminated by Hyatt based on fabricated excuses, i.e., his failure to complete an assigned task timely, his lack of production, and his failure to meet with his direct supervisor, Linda Thiem, on January 31, 2011 when he claims he was ill. He maintains that these reasons were pretextual and that he was actually terminated because of his race and age. He represents that at different times General Manager Steve Trent and Controller Rico Espinelli commented to him that he should retire so that younger employees could be hired. Plaintiff also asserts that contrary to Hyatt's written policies, they failed to provide him with a written notice of his purported failures.

After Plaintiff was terminated, his replacements were not black, not African, younger than he, and less experienced and qualified than he was, and some were not members of his protected classes. He conclusorily asserts that Hyatt by and through its agents, treated him differently than its other employees who were not of African descent or black or who were younger than he was. He charges that Hyatt intentionally discriminated against him with malice or reckless indifference[1] and deprived him of any

---

[1] To recover punitive damages under Title VII, the plaintiff must establish that the defendant acted "with malice or with

employment opportunity with respect to compensation and the terms, conditions, and privileges of employment, based on his race and age.  Hyatt allegedly "recruited several employees to pursue a course of conduct to cause Plaintiff to voluntarily resign" or "to trump up fallacious reasons in order to discharge" him.  Their harassment included "overly picky criticism and disparagement" of his work performance.  His termination by Hyatt's supervisors was "malicious, oppressive, or in reckless disregard of his rights." He seeks actual damages (including back and future pay and pension benefits, sick leave, and vacation time), punitive damages, pre- and post-judgment interest, attorney's fees, and costs.

### Relevant Law

Under section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a)(1), it is "an unlawful employment action for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin."

Under the statute, suit may be brought under two distinct theories of discrimination, disparate treatment and

---

reckless indifference to the federally protected rights of an aggrieved individual."  42 U.S.C. § 1981a(b)(1);*EEOC v. Boh Bros. Const. Co., LLC*, 731 F.3d 444, 467 (5th Cir. 2013).  Even if the plaintiff shows that the employer's agents acted with malice or reckless indifference, the employer may avoid vicarious punitive damages liability if it shows that it made a good-faith effort to comply with Title VII.  *Boh Bros., id., citing Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534 (1999).

disparate impact.  *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977); *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006), *cert. denied*, 549 U.S. 888 (2006). Title VII expressly prohibits both (1) intentional discrimination based on race, color, religion, sex or national origin, known as "disparate treatment," as well as (2) an employer's facially neutral practices that are discriminatory in operation against protected groups (race, color, religion, sex or national origin) and not required by the nature of the job, known as "disparate impact".  42 U.S.C. §§ 2000e-2(a)(1) and 2000e(k)(1)(A); *Ricci v. DeStefano*, 129 S. Ct. 2658, 2672-73 (2009); *Pacheco*, 448 F.3d at 787.   The instant suit is one for disparate treatment, which requires proof of discriminatory motive.  *Pacheco*, 448 F.3d at 787.

Before filing suit, a plaintiff bringing suit under Title VII must exhaust administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the unlawful act.  42 U.S.C. § 2000e-5(e)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002); *Huckaby v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998). Because Texas has an agency for receipt of civil rights complaints, i.e., the Texas Workforce Commission Civil Rights Division ("TWC"), and is therefore known as a "deferral state," Title VII expands the period to file a charge with the EEOC to 300 days if the complainant has filed a timely charge with state agency authorized to receive such within 180 days of the unlawful

act. 42 U.S.C. § 2000e-5(e)(1).[2] Failure to file a timely charge
with the EEOC, which allows the agency to investigate and, if
appropriate, negotiate a resolution with the employer, bars suit
in federal court. *McClain v. Lufkin Industries, Inc.*, 519 F.3d
264. 273 (5th Cir. 2008). After the complainant receives a right-
to-sue letter from the EEOC, he must file suit within ninety days;
the period is strictly construed unless the plaintiff alleges
facts that might warrant equitable tolling, such as that he
vigorously pursued his claim but missed deadlines because of his
lack of sophistication or filed in the wrong forum. *Johnson v.
Select Energy Services, LLC*, Civ. A. No. H-11-3486, 2013 WL
5425115, at *3 (S.D. Tex. Sept. 24, 2013).

A plaintiff may establish a claim of discrimination
under Title VII by presenting direct evidence or by using the
indirect method of proof set out in *McDonnell Douglas Corp. v.
Green*, 411 U.S. 792 (1973).

"Direct evidence proves intentional discrimination
without inference or presumption when believed by the trier of
fact." *Jones v. Overnite Transportation Co.*, 212 Fed. Appx. 268,
272 (5th Cir. 2006), *citing Sandstad v. CB Richard Ellis, Inc.*, 309
F.3d 893, 897 (5th Cir. 2002). "In the context of Title VII,
direct evidence includes any statement or written document showing

---

[2] If the complainant files his first charge within 180 days
with the EEOC, it is considered filed with the Texas Workforce
Commission. *Johnson v. Select Energy Services, LLC*, 2013 WL
5425115, at *2 n.6 (S.D. Tex. Sept. 24, 2013), *citing Griffin v.
City of Dallas*, 26 F.3d 610, 612-13 (5th Cir. 1994).

a discriminatory motive on its face." *Fierros v. Texas Dept. of Health*, 274 F.3d 187, 195 (5th Cir. 2001), *citing Portis v. National Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir, 1994); *Overnite Transportation*, 212 Fed. Appx. at 272.  If a plaintiff produces direct evidence of discrimination, he may "bypass the *McDonnell Douglas* burden-shifting framework [discussed *infra*] commonly applied in discrimination cases and proceed directly to the question of liability." *Moore v. U.S. Dept. of Agric.*, 55 F.3d 991, 995 (5th Cir. 1995); *Fierros v. Texas Dept. of Health*, 274 F.3d 187, 192 (5th Cir. 2001); *Stone v. Parish of East Baton Rouge*, No. 08-31008, 2009 WL 2169122, *2 (5th Cir. July 20, 2009).  "In such 'direct evidence' cases, 'the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor.'" *Fierros*, 274 F.3d at 192, *quoting Brown v. East Miss. Elec. Power Assoc.*, 989 F.2d 858, 861 (5th Cir. 1993).

"Workplace remarks may constitute direct evidence of discrimination if they are '1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the [complained-of adverse employment decision]; 3) made by an individual with authority over the employment decision at issue[3]; and 4) related to the employment decision at issue.'" *Brown v.*

---

[3] Or someone in the position to influence an employment decision.  *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 578 (5th Cir. 2003)(*per curiam*).

*CSC Logic, Inc.*, 82 F.3d 651, 655 (5ᵗʰ Cir. 1996); *Patel v. Midland Memorial Hospital & Medical Center*, 298 F.3d 333, 343-44 (5ᵗʰ Cir. 2002), *quoting Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222-23 (5ᵗʰ Cir. 2001).[4] *See also Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 401 (5ᵗʰ Cir. 2000), *cert. denied*, 532 U.S. 937 (2001).   If the comments fail to meet these criteria, e.g., if they are vague and remote in time, or the speaker has no authority or influence over the employment decisions, they are merely "stray remarks." *See, e.g., Krystek v. University of Southern Miss.*, 164 F.3d 251, 256 (5ᵗʰ Cir. 1999).   After the issuance of *Reeves*, the Fifth Circuit has continued to find that remarks may be "probative

---

[4] In *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133 (2000), *reversing Reeves v. Sanderson Plumbing Prods., Inc.,* 197 F.3d 688 (5ᵗʰ Cir. 1999), the Supreme Court declined to use this four-prong test from *CSC Logic* employed below by the Fifth Circuit where remarks were submitted as additional evidence of discriminatory animus in the last stage of the *McDonnell Douglas* framework.   Denying summary judgment below, the Fifth Circuit *inter alia* discounted these remarks because they "were not made in the direct context of Reeves's termination."   197 F.3d at 693, *reversed*, 530 U.S. 133.   Although the Fifth Circuit now follows the
Supreme Court's holding where the comment is presented as additional, i.e., circumstantial, evidence in the *McDonnell Douglas* framework, it has continued to apply this four prong test from *CSC Logic* when the remark is presented as direct evidence of discrimination.   *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5ᵗʰ Cir. 2012), *citing Laxton v. Gap, Inc.*, 333 F.3d 572, 583 n.4 (5ᵗʰ Cir. 2001), *citing Auguster v. Vermillion Parish Sch. Bd.*, 249 F.3d 400, 404-05 (5ᵗʰ Cir. 2001)(noting that the Fifth Circuit has determined that *Reeves* did not overrule the Fifth Circuit's "stray remarks jurisprudence, at least where the plaintiff has failed to produce substantial evidence that each of the defendant's articulated justifications was pretext."), *citing Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 400-01 (5ᵗʰ Cir. 2000)(applying the stray remarks doctrine where the plaintiff has failed to establish that each of defendant's articulated justifications was pretext), *cert. denied*, 532 U.S. 937 (2001).

of discriminatory intent" and "are appropriately taken into account when analyzing the evidence . . . even where the comment is not in the direct context of termination and even if uttered by one other than the formal decision maker, provided that the individual is in a position to influence the decision." *Palasota*, 342 F.3d at 578, *cited in Cervantez v. KMGP Services Co., Inc.*, No. 08-11196, 2009 WL 2957297, *4 & nn.22-27 (5th Cir. Sept. 16, 2009); *see also Brauninger v. Motes*, 260 Fed. Appx. 634, 640 & nn. 7 and 8 (5th Cir. 2007)(to be evidence of animus, a remark must be related to and in proximate time to a specific employment decision and the remark must be "direct and unambiguous."). *See also Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012)(remarks may be used as evidence of discriminatory treatment only if they (1) demonstrate discriminatory animus and (2) were "made by a person primarily responsible for the adverse employment action or by a person with influence or leverage over the forma decisions maker."). "Remarks may serve as sufficient evidence of age discrimination if the offered comments are: 1) age related; 2) proximate in time to the employment decision; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at hand. . . . Comments that are vague and remote in time are insufficient to establish discrimination." *Haas v. ADVO Sys., Inc.*, 168 F.3d 732, 733 (5th Cir. 1999). Remarks reflecting discriminatory animus may be used to demonstrate pretext or as additional evidence of discrimination. *Russell*, 235 F.3d at 225. Where the remarks are

the *only* evidence of pretext, however, they are not probative. *Palasota*, 342 F.3d at 577.

Under the *McDonnell Douglas* framework applied to circumstantial evidence cases,[5] a plaintiff must first make a *prima facie* case of employment discrimination.  To establish a *prima facie* case of intentional discrimination under a disparate treatment theory Plaintiff must demonstrate that he "(1) is a member of a protected class . . .; (2) was qualified for the position; (3) was subjected to an adverse employment action; and (4) was replaced by someone outside the protected class, or in the case of disparate treatment, shows that other similarly situated employees [not in the protected class] were treated more favorably." *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004).  The Fifth Circuit has held that a plaintiff's subjective belief that he was discriminated against is insufficient to establish a *prima facie* case of discrimination under Title VII, the TCHRA, or the ADEA.  *Vasquez v. Nueces County, Texas*, ___ Fed. Appx. ___, No. 13-40453, 2013 WL 6670973, at *2 (5th Cir. Dec. 19, 2013), *citing Baltazor v. Holmes*, 162 F.3d 368, 377 n.11 (5th Cir. 1998).

Regarding the third prong of a *prima facie* case, an adverse employment action for Title VII discrimination claims

---

[5] The same evidentiary procedure for allocating burdens of proof applies to discrimination claims under Title VII, the ADEA, and the TCHRA.  *Meinecke v. H&R Block of Houston*, 66 F.3d 77, 83 (5th Cir. 1995); *Bodenheimer v. PPG Indus.* Inc., 5 F.3d 955, 957 n.4 (5th Cir. 1993).

based on race, color, religion, sex, or national origin "'include[s] only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating.'" *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007), *quoting Green v. Administrator of Tulane Educ. Fund*, 284 F.3d 641, 657 (5th Cir. 2002). "Title VII was only designed to address '*ultimate* employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions.'" *Burger v. Central Apartment Mgmt., Inc.,* 168 F.3d 875, 878 (5th Cir. 1999)(emphasis in original), *quoting Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir.), *cert. denied*, 522 U.S. 932 (1997).  To be actionable, an adverse employment decision must be a "tangible employment action that constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 764 (1998).

For the fourth prong, "similarly situated" employees are employees who are treated more favorably in "nearly identical" circumstances[6]; the Fifth Circuit defines "similarly situated"

---

[6] *See Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009), discussing "similarly situated" employees:

> Employees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not been

- 12 -

narrowly.  *Silva v. Chertoff*, 512 F. Supp. 2d 792, 803 n.33 (W.D. Tex. 2007).[7]   Similarly situated individuals must be "nearly

---

> deemed similarly situated. Likewise, employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated. This is because we require that an employee who proffers a fellow employee as a comparator demonstrate that the employment actions at issue were taken "under nearly identical circumstances." The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions. If the "difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer," the employees are not similarly situated for the purposes of employment discrimination analysis. [footnotes omitted]

[7] District Court Judge Montalvo in *Silva* listed the following examples in n.33:

> *Wheeler [v. BL Dev. Corp.*, 415 F.3d 399, 406 (5th Cir. 2005)], (finding insufficiently identical circumstances where the terminated white plaintiff and a black manager who remained employed had the same supervisor, were both company directors, and were both accused of removing company assets at relatively the same time; the Court of Appeals noted that the white plaintiff lied repeatedly during the course of the company's investigation, while the black employee admitted her actions; in addition, the value of the property the black employee removed

identical" and must fall outside the plaintiff's protective class. *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005).  Where different decision makers or supervisors are involved, their

---

was "dramatically less" than the property the white plaintiff removed); *Mayberry [v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995)](finding that the plaintiff had not shown "nearly identical" circumstances merely because he produced evidence that white and black employees in the same position had scrapped parts due to the employer's operator error or poor workmanship, but were not disciplined; the plaintiff had not shown that the undisciplined employees had, like him, a history of poor work performance and scrapped parts damage amounting to $8,000); *Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991)(concluding that the plaintiff had not shown "nearly identical" circumstances because the employee outside the plaintiff's protected class who allegedly received more favorable treatment did not have the same supervisor); *Smith v. Wal-Mart Stores (no. 471)*, 891 F.2d 1177, 1180 (5th Cir. 1990)(determining that the plaintiff and the employee outside her protected class who allegedly received preferential treatment were not similarly situated where the employer discharged the plaintiff because the plaintiff violated its non-fraternization policy and the other employee's conduct did not involve the employer's non-fraternization policy).  "[P]ut another way, the conduct [or circumstances] at issue is not nearly identical when the difference between the plaintiff's conduct [or circumstances] and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer." *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 304-05 (5th Cir. 2000)(finding that the "striking differences" between the plaintiff's and purportedly similarly situated employees outside the plaintiff's protected class "more than account[ed] for the different treatment they received.").

decisions are rarely "similarly situated" in relevant ways for establishing a *prima facie* case. *Thompson v. Exxon Mobil Corp.*, 344 F. Supp. 2d 971 (E.D. Tex. 2004), *citing Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000) for the proposition that "[a] demonstration of substantial similarity generally requires a showing that a common supervisor was involved in the decision making"). *See also Perez v. Texas Dep't of Criminal Justice, Inst'l Div.*, 395 F.3d 206, 213 (5th Cir. 2004)("We . . . have explained consistently that for employees to be similarly situated those employees' circumstances, including their misconduct, must have been 'nearly identical.'"); *Hockman v. Westward Communications, LLC*, 282 F. Supp. 2d 512, 527-28 (E.D. Tex. 2003)("The 'nearly identical' standard, when applied at the *McDonnell Douglas* pretext stage, is a stringent standard--employees with different responsibilities, different supervisors, different capabilities, different work rule violations or different disciplinary records are not considered to be 'nearly identical.'"), *citing Okoye v. Univ. of Tex. Houston Health Science Center*, 245 F.3d 507, 514 (5th Cir. 2001)(Employees are not in nearly identical circumstances when their actions were reviewed by different supervisors; "to establish disparate treatment a plaintiff must show that the employer 'gave preferential treatment to [] [another] employee under 'nearly identical' circumstances' . . .; that is "the misconduct for which [plaintiff] was discharged was nearly identical to that engaged in by . . . [other] employee[s].'")).

Where the plaintiff fails to establish a *prima facie* case of discrimination, the court does not have to reach the subsequent burden-shifting analysis under *McDonnell Douglas*. *McDonnell Douglas*, 411 U.S. at 802004; *Reeves*, 530 U.S. at 142-43; *Nguyen v. Univ. of Tex. School of Law*, ___ Fed. Appx. ___, 2013 WL 5514090, at *4 (5th Cir. Oct. 7, 2013).

If the plaintiff makes a *prima facie* case, there is a presumption of discrimination, and the burden of production then shifts to the employer to provide a legitimate, non-discriminatory reason for the adverse employment action. *Chevron Phillips*, 570 F.3d at 615.

If the employer meets this burden, the presumption of discrimination disappears and the plaintiff bears the ultimate burden of persuading the trier of fact by a preponderance of the evidence that the defendant intentionally discriminated against the plaintiff because of his protected status. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001). To do so, the plaintiff must produce substantial evidence showing that the proffered legitimate nondiscriminatory reason is a pretext for discrimination. *Reeves*, 530 U.S. at 143. "Evidence is 'substantial' if it is 'of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Laxton v. Gap, Inc.*, 333 F.3d 572, 579 (5th Cir. 2004). Plaintiff may use either of two methods to rebut each of the nondiscriminatory reasons articulated by the employer: (1) pretext or (2) mixed motive. *Rachid v. Jack in The*

*Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). "Mere subjective assertions, without more, are insufficient" to prove that the employer's articulated reasons for his termination are pretextual. *Nobles v. Cardno, Inc.*, ___ Fed. Appx. ___, No. 13-60483, 2013 WL 6571796, at *2 (5th Cir. Dec. 16, 2013), *citing Waggoner v. City of Garland, Tex.*, 987 F.2d 1160, 1164 (5th Cir. 1993). "'Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext'"; the plaintiff "'must rebut each non-discriminatory reason articulated by the employer.'" *Id., citing LeMaire v. Louisiana Dept. of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007), and *McCoy v. City of Shreveport*, 492 F.3d 551, (5th Cir. 2007).

For pretext, the plaintiff must show that the defendant's proffered explanation is false or "unworthy of credence." *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2004), *citing Wallace*, 271 F.3d at 221. One way is to show that the employer treated plaintiff more harshly that other "similar situated employees" for "nearly identical conduct", i.e, a disparate treatment theory using comparators. *Wallace*, 271 F.3d at 221; *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). Although the presumption of discrimination has disappeared, the trier of fact may consider evidence establishing the plaintiff's *prima facie* case and inferences drawn therefrom in determining whether the employer's explanation is pretextual. *Reeves*, 530 U.S. at 143. Coupled with the Plaintiff's *prima facie* case, for purposes of summary judgment the evidence of pretext

usually will constitute sufficient evidence to raise an issue of
material fact as to whether the employer's reason is credible or
merely a pretext for discrimination or, if its reason is true,
that a discriminatory reason more likely motivated the decision to
effect its adverse employment action.  *Reeves*, 530 U.S. at 143,
147-49.[8]  Sometimes, however, additional evidence may be required.
*Id.*  "[T]he factfinder's rejection of the employer's legitimate,
nondiscriminatory reason for its action does not *compel* judgment
for the plaintiff.  The ultimate question is whether the employer
intentionally discriminated, and proof that 'the employer's
proffered reason is unpersuasive, or even obviously contrived,
does not necessarily establish that the plaintiff's proffered
reason is correct.'  In other words, '[i]t is not enough . . . to
*dis*believe the employer; the fact finder must *believe* the
plaintiff's explanation of intentional discrimination.'"  *Id.* at
146-47 (emphasis in original), *citing St. Mary's Honor Center*, 509
U.S. at 511, 524, 519.  "Whether judgment as a matter of law is
appropriate in any particular case will depend on a number of
factors.  Those include the strength of the plaintiff's prima
facie case, the probative value of the proof that the employer's
explanation is false and any other evidence that supports the
employer's case and that properly may be considered on a motion
for judgment as a matter of law."  *Id.* at 148-49.

---

[8] In *Reeves*, the Supreme Court found that the Fifth Circuit
panel "erred in proceeding from the premise that a plaintiff must
always introduce additional, independent evidence of
discrimination."  *Reeves*, 530 U.S. at 149.

Alternatively, rather than demonstrating that the defendant's articulated reason for its action is a pretext for discrimination under Title VII, the plaintiff may show that the defendant's reason for the decision, while true, is only one reason for its conduct and another motivating factor is plaintiff's protected characteristic.[9] *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004); *Pinkerton v. U.S. Dept. of Educ.*, 508 F.3d 207, 213 (5th Cir. 2007). This "motivating factor" analysis does not apply to the ADEA. *Smith v. Xerox*, 602 F.3d 320 (5th Cir. 2010).

A Title VII plaintiff seeking back pay for employment discrimination has a duty to mitigate damages, i.e., to "use reasonable diligence to obtain 'substantially equivalent' employment." *Ellerbrook v. Lubbock, Texas*, 465 Fed. Appx. 324, No. 11-10058, 2012 WL 851621, at *12 (5th Cir. Mar. 14, 2012), *quoting Sellers v. Delgado Coll.*, 902 F.2d 1189, 1193 (5th Cir. 1990). The employer bears the burden of proving a failure to mitigate. *Id., citing id.* The employer must show that (1) substantially equivalent work was available and (2) the employer failed to exercise reasonable diligence to obtain it. *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 393 (5th Cir. 2003). "Substantially equivalent employment is that employment which affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status

---

[9] The Fifth Circuit calls this the "modified *McDonnell Douglas*" approach. *Rachid*, 376 F.3d at 312.

as the position from which [the former employee] has been
discriminatorily terminated." *Id.* If the employer shows that the
former employee did not use reasonable diligence, the employer
does not have to prove the availability of equivalent employment.
*Id.*

The analysis for a race discrimination claim under the
TCHRA is generally the same as that under Title VII. *Mission
Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W. 3d 629, 633-34 (Tex.
2012)("Section 21.051 is effectively identical to its federal
equivalent. . . Because one of the purposes of the TCHRA is to
'provide for execution of the policies of Title VII of the Civil
Rights Act of 1964,' we have consistently held that those
analogous federal statutes and the cases interpreting them guide
our reading of the TCHRA.").[10] The Texas Commission on Human Rights
Act ("TCHRA"), Section 21.051 of the Texas Labor Code provides in
relevant part, "An employer commits an unlawful employment
practice if because of race, color, disability, religion, sex,

---

[10] In enacting the TCHRA, the Texas Legislature intended to
correlate "state law with federal law in the area of
discrimination in employment." *Gold v. Exxon Corp.*, 960 S.W.2d
378, 380 (Tex. App.--Houston [14th Dist.] 1998, no writ).  Thus
the same burden-shifting framework used to analyze a case under
the federal discrimination statutes applies under the Texas
statute.  *Id.*  The case law developed under Title VII governs
claims under the TCHRA.  *Texas Dep't of Human Services v. Hinds*,
904 S.W.2d 629, 636 (Tex. 1995).  TCHRA's express purpose is "the
execution of the policies embodied in Title VII." *Schroeder v.
Texas Iron Works, Inc.*, 813 S.W.2d 483, 485 (Tex. 1991); Texas
Labor Code Ann. § 21.001(1).  Therefore courts interpret the TCHRA
to be consistent with federal law.  *Leatherwood v. Houston Post
Co.*, 59 F.3d 533, 536 n.5 (5th Cir. 1995); *Specialty Retailers,
Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996).

- 20 -

national origin or age the employer . . . discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment . . . ."  Under the TCHRA the plaintiff need only prove that age was a "motivating factor for the employment decision.  Tex. Labor Code § 21.125(a).

The procedural requirements under the TCHRA, however, are somewhat different from those under Title VII.  A claimant aggrieved by an illegitimate employment action must file a complaint with the TWC within 180 days of the alleged discriminatory action.  Tex. Labor Code § 21.202(A).  Unlike the limitations period for filing a discrimination charge with the EEOC where there is a dispute between courts whether exhaustion implicates the subject matter jurisdiction,[11] the 180-day period is both mandatory and jurisdictional.  *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W. 2d 490, 492 (Tex. 1996).  "A one-time employment event . . . is a discrete action that ''constitutes a separate actionable unlawful employment practice' and therefore should place an employee on notice that a cause of action has accrued,'"  *Sauceda v. Univ. of Texas at Brownsville*, ____ F.2d _

---

[11] *Rivers v. Geithner*, ____ Fed. Appx. ___, No. 12-20817, 2013 WL 6623542, at *5 n.1 (5th Cir. Dec. 14, 2013).  Other Fifth Circuit cases have pronounced that timely filing of a discrimination charge with the EEOC "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.'"  *Hull v. Emerson Motors/Nidec*, No. 12-60926, 532 Fed. Appx. 586, 588 (5th Cir. June 27, 2012), *quoting Taylor v. United Parcel Serv.*, 554 F.3d 510, 521 (5th Cir. 2008).

___ 2013 WL 3899237, at *6 (S.D. Tex. July 26, 2013).  While the TCHRA requires exhaustion of remedies, commenced by the filing of a complaint with the Texas Workforce Commission Civil Rights Division ("TWC"), based on a 1998 Worksharing Agreement under 42 U.S.C. § 2000e-4(q)(1) between it and the EEOC to be amended yearly,  filing a charge with the EEOC within 180 days satisfies the state administration requirements. *Johnson v. Select Energy Services, LLC*, Civ. A. No. H-11-3486, 2013 WL 5425115, at *2 n.6 (S.D. Tex. Sept. 24, 2013)(adding that in a deferral state the EEOC must wait at least 60 days before processing the complaint to allow the state an opportunity to investigate and attempt to resolve the dispute). *Burgmann Seals America, Inc. v. Cadenhead*, 135 S.W. 3d 854, 857 (Tex. App.--Houston [1st Dist.] 2004)("We hold that providing the name of the TCHR and checking the box for simultaneous filing is the equivalent of filing with the TCHR."[12]). Unlike under Title VII, under Texas Labor Code § 21.254, "[w]ithin 60 days after the date a notice of right to file a civil action is received, the complainant may bring a civil action against the respondent."  Case law requires the complainant also to serve

---

[12] The popular name for Chapter 21 of the Texas Labor Code is the Texas Commission on Human Rights Act or TCHRA.  Texas abolished the Texas Commission on Human Rights in March 2004 and transferred its duties to the TWC.  Although the Texas Supreme Court stated it would not use the earlier name, the popular name is still used by many courts. *Little v. Texas Dept. of Criminal Justice*, 148 S.W. 3d 374, 377-78 (Texas 2004); *ATI Enterprises, Inc. v. Din*, ___ S.W. 3d ___, No. 05-11-01522-CV, 2013 WL 5783398, at *11 n.3 (Tex. App.-Dallas Oct. 23, 2013).

process on the defendant within that sixty days.  *Select Energy*, 2013 WL 5425115, at *3.

The ADEA makes it "unlawful for an employer to fail or refuse to hire . . . any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  19 U.S.C. § 623(a)(1).

A plaintiff may prove a claim of age discrimination with either direct or circumstantial evidence.  *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010).  If a plaintiff provides direct evidence of discriminatory animus as a factor in the employment decision, the burden shifts to the defendant to prove that "'it would have taken the same action, regardless of discriminatory animus.'"  *Maestas v. Apple, Inc.*, ___ F.3d ___, 2013 WL 5385478, at *3 (5th Cir. Sept. 27, 2013), *citing Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002), *citing Price Waterhouse v. Hopkins*, 490 U.S. 228, 252-53 (1989).

Where there is no direct evidence of age discrimination, the same *McDonnell Douglas* evidentiary procedure for allocating burdens of proof applies to discrimination claims under the ADEA and under Title VII.  *Meinecke v. H&R Block of Houston*, 66 F.3d 77, 83 (5th Cir. 1995); *Bodenheimer v. PPG Indus. Inc.*, 5 F.3d 955, 957 n.4 (5th Cir. 1993).

In a suit for age discrimination, the plaintiff must first establish by a preponderance of the evidence a *prima facie* case of discrimination.  To establish a *prima facie* case of

- 23 -

intentional age discrimination, a plaintiff must show that (1) he was discharged; (2) he was qualified for the position; (3) he was within a protected class (over the age of forty) at the time of the discharge; and (4) he was either replaced by someone younger, or otherwise discharged because of his age. *Bodenheimer*, 5 F.3d at 957. The United States Supreme Court has made clear that, in applying that the evidentiary burden of *McDonnell Douglas*, 411 U.S. at 802, to an ADEA case, an inference that the employment acting was based on a discriminatory motive cannot be drawn where one worker is replaced by another who is not significantly younger but outside the protected class; instead the person replacing the plaintiff must be "substantially younger." *O'Connor v. Consolidated Caterers Corp.*, 517 U.S. 308, 313 (1996). While only those forty years or older are protected by the ADEA, it prohibits age discrimination against employees not on the basis of class membership, but on the basis of age. The evidence for a *prima facie* case must be sufficient to "'create an inference that an employment decision was based on a[n] [illegal] discretionary criterion.'" *Id.* at 312-13*, quoting Teamsters v. United States*, 431 U.S. 324, 358 (1977). Thus the replacement of a 68-year-old by a 65-year-old or a 40-year-old by a 39-year-old is "thin evidence." Instead the Supreme Court looked at a more reliable indicator, i.e., whether the plaintiff was "substantially" older than the replacement employee. *Id.* Courts have held that a five-year difference between an employee and her replacement is insufficient as a matter of law to create an inference of

discrimination. *Grogan v. Savings of America, Inc.*, 118 F. Supp. 2d 741, 748 (S.D. Tex. 1999)(finding two years is not a substantial difference justifying an inference of age discrimination), *citing Cramer v. Intelidata Techs. Corp.*, No. 97-2775, 1998 WL 911735, at *3 n.7 (4th Cir. Dec. 31, 1998); *Bush v. Dictaphone Corp.*, 161 F.3d 363, 368 (6th Cir. 1998).

        If the plaintiff succeeds, the *prima facie* case raises a presumption of discrimination.  The defendant employer must then articulate, but need not prove, that the discharge was based on a legitimate, non-discriminatory reason for the termination.  It is not required to prove that it was actually motivated by these proffered reasons, nor must it demonstrate an absence of discriminatory motive.  If the employer succeeds, the plaintiff must then prove by a preponderance of the evidence that the employer's reasons are pretextual and that the discharge was motivated by intentional age discrimination.  Although the burden of production shifts, the plaintiff always retains the ultimate burden of persuasion that there is a nexus between his termination and his age.  *St. Mary's Honor Center v. Hicks*, 113 S. Ct. 2742, 2747-49, 2751-53 (1993); *Odom v. Frank*, 3 F.3d 839, 850 (5th Cir. 1993).  While age does not have to be the only reason for an adverse employment decision, it must be a factor in the employer's decision and have a determinative influence on the outcome.  *Woodhouse v. Magnolia Hospital,* 92 F.3d 248 (5th Cir. 1996).[13]

---

        [13] Unlike the TCHRA, the ADEA requires "but for" causation rather than age being "a motivating factor."  *Jackson v. Host*

Damages for mental pain and suffering are not recoverable under the ADEA and evidence regarding such is not admissible for an ADEA claim. *Hawthorn v. Truck Trailer & Equipment, Inc.*, Civ. A. No. 3:11cv518-CWR-FKB, 2013 WL 3213093, at *4 (S.D. Miss. June 26, 2013), *citing Guthrie v. J.C. Penney Co., Inc.*, 893 F.2d 202, 208 (5th Cir. 1986), and *Smith v. Berry Co.*, 165 F.3d 390, 396 (5th Cir. 1999).

Punitive damages are also not available under the ADEA. *Dean v. Am. Sec. Ins. Co.*, 559 F.2d 2036, 1039 (5th Cir. 1977); *Little v. Technical Specialty Products, LLC*, 940 F. Supp. 2d 460, 479 (E.D. Tex. 2013).

The same analytical evidentiary framework applies to age discrimination claims under the TCHRA as under the ADEA. *Evans v. City of Houston, Texas*, 246 F.3d 344, 348 (5th Cir. 2001). *See also Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 739 (5th Cir. 1999)("The purpose of the [Human Rights Act] is to coordinate and conform federal law under Title VII and the ADEA," so the courts look to federal precedent in the absence of state decisional law), *citing Caballero v. Cent. Power & Light Co.*, 858 S.W. 2d 359, 361 (Tex. 1993).

Title 42 U.S.C. § 1983 does not grant substantive rights, but provides a vehicle for a plaintiff to vindicate rights

---

*Intern., Inc.*, 426 Fed. Appx. 215, 219 n.2 (5th Cir. Feb. 1, 2011); *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 168 (2000); *Moss v. BMC Software, Inc.*, 610 F.3d 917, 928 (5th Cir. 2010)("to the extent that [plaintiff] alleges that discrimination was a motivating factor--rather than the 'but for' cause--in [defendant's] decision not to hire him, his claims must fail.").

protected by the United States Constitution and other federal laws. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). It provides a cause of action for individuals who have been "depriv[ed] of [their] rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person acting under color of state law. *Id.*

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) that he was deprived of a right or interest secured by the Constitution and the laws of the United States and (2) that the defendant acted under color of state law. *Cornish v. Corr. Services Corp.*, 402 F.3d 545, 549 (5th Cir. 2005); *Doe v. Rains County Indep. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995). Where the defendants are private entities or actors, state action can be found (1) where the entity or person performs a function that is traditionally the exclusive province of the state or (2) where there is a nexus between the state and the private defendant's action "such that the action is fairly attributable to the state." *Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 1989), *overruled on other grounds*, *Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 (2003)(*en banc*).

The Supreme Court and the Fifth Circuit apply three different tests (the public function test, the state compulsion test, and the joint action test) to determine whether apparent private conduct may be attributed to the state. *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 939 (1982); *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241-42 (5th Cir. 1999). For state

action to be found, the court must find that "the state is responsible for the specific conduct of which the plaintiff complains." *Wong*, 881 F.2d at 202. Under the public function test, "a private entity may be deemed a state actor when the entity performs a function which is traditionally the exclusive province of the state. *Id.*, citing *Flagg Brothers, Inc. v. Brooks*, 436 U.S. 149, 157-58 (1978)("While many functions have traditionally been performed by governments, very few have been 'exclusively reserved to the State,'" e.g., state-regulated elections), *citing Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974). Under the state compulsion test, for the state to be responsible for the private party's decisions, the state must have "''exercised coercive power or provided such significant encouragement . . . that the choice must in law be deemed that of the state.''" *Id., quoting Daigle v. Opelousas Health Care, Inc.*, 774 F.2d 1344, 1348-49 (5th Cir. 1995), *quoting Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) "Under the nexus or joint action test, state action may be found where the government has 'so far insinuated itself into a position of interdependence with the [private actor] that it was a joint participant in the enterprise.'" *Bass*, 180 F.3d at 242. "[A] non-state actor may be liable under 1983 if the private citizen was a 'willful participant in joint activity with the State or its Agents'" and the plaintiff alleges that there was "(1) an agreement between private and public defendants to commit an illegal act and (2) a deprivation of constitutional rights." *Priester v. Lowndes Cty.*,

354 F.3d 414, 420 (5th Cir. 2004).  Conclusory allegations without supporting facts will not support such a claim.  *Id.*

        To state a claim under 42 U.S.C. § 1985(c), a plaintiff must plead (1) a conspiracy involving two or more persons, (2) to deprive, directly or indirectly, a person or class of persons of equal protection of the laws, (3) that one or more of the conspirators committed an act in furtherance of that conspiracy (4) which causes injury to another in his person or property or a deprivation of any right or privilege he has as a citizen of the United States, and (5) the conspirators' action is motivated by "discrimnatory animus." *Wong*, 881 F. 2d at 202-03; *Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994).  In addition to race-based, the discriminatory animus may also be based on membership in some other group with inherited or immutable characteristics (e.g., gender, religion or national origin) or arise from the plaintiff's political beliefs or associations. *Galloway v. State of Louisiana*, 817 F.2d 1154, 1159 (5th Cir. 1987), *citing Kimble v. D.J. McDuffy, Inc.*, 623 F.2d 1060, 1066 (5th Cir. 1980).

### Hyatt's Motion for Summary Judgment (#7)

        Noting that Plaintiff took no depositions and failed to serve any written discovery, with supporting documentation[14] Hyatt fills in factual details that Plaintiff's cursory complaint lacks.

---

        [14] Plaintiff's deposition testimony and declarations of Hyatt Regency Houston Controller Linda Thiem, Hyatt Regency Houston Human Resources Director Julie Neumann, and Hyatt Corporate Regional Vice President of Finance William Lumpkin.

- 29 -

It states that although it originally hired Agoh in 1980 as a food and beverage cashier, after he obtained a Bachelor of Science degree in Computer Sciences in 1985, he began to work in computer support.  He was promoted to the Management Information Systems Manager ("MIS Manager") at the Hyatt Regency Houston in 1991.  As the computer system grew, Agoh was placed under supervision of the Hotel's Controller, Rick Espinelli ("Espinelli"), until 2009. Agoh's job made him responsible for securing, maintaining, and backing up the computer systems, assuring emergency data recovery, developing software, educating users, adding new users, working with vendors, and repairing and installing new systems and hardware.

When Plaintiff met with Espinelli for his 2008 performance evaluation, Plaintiff was informed that there were problems with the "overall approval rating of the department" and that "often times, computer knowledge is being questioned due to inability to resolve issues immediately."  Agoh Dep., Ex. B., Ex. 1.

Espinelli retired in 2009, and in 2010 Linda Thiem ("Thiem") transferred from Hyatt Regency Dallas and became the Controller at Hyatt Regency Houston, reporting to Managing Director Steve Trent.  Agoh then reported to Thiem.  At the time Hyatt was changing email over to LOTUS Notes and installing a more sophisticated property management information system ("OPERA") that shared services within and among Hyatt hotels and allowed integration of food and beverage, housekeeping, and engineering

department needs within and among all of its hotels.  Agoh was
responsible for analyzing the Hotel's network topology to ensure
the new systems would be supported and that existing systems met
or were upgraded to the specification needs of the new system.
Hyatt maintains that during this migration to OPERA, Plaintiff's
role at the Hyatt Regency Houston was the same as that of MIS
Managers at other Hyatt hotels.

In the next few months Thiem found that there were
significant problems with Plaintiff's assistance to both the Hotel
staff and his management of the conversion to shared services.  In
his annual review in March 2010 Thiem told Plaintiff that he must
update employees and instruct them about the new information
management services, conduct information learning sessions, follow
up on outstanding issues each week, clean up old files on the
network, and terminate old users.  She also asked Rodney Linville
("Linville"), Hyatt's Divisional MIS Manager, to audit information
operations at the hotel in an effort to improve the informational
systems.  Linville produced a detailed report identifying issues
with improper labeling, improper server naming conventions within
the systems, and incomplete user forms and explained how some
practices violated Hyatt policies.  Agoh responded by blaming the
problems on funding and Espinelli.

After that audit and after several weeks of informal
counseling, Thiem placed Agoh on a 90-day Performance Improvement
Plan, to commence on November 8, 2010; the Plan expressly warned
Agoh that he might discharged at any time during that period if he

did not correct the problems with his performance.  Trent, Thiem, and Human Resources Director Julie Neumann ("Neumann") met with Plaintiff and told him that he had to address the issues in Linville's report as well as those previously discussed with him, including noncompliant systems and procedures, unmet performance goals, and business management improvement.  On November 5, 2010 Trent, Thiem, and Neumann obtained Agoh's agreement to meet weekly to follow up on his progress. Plaintiff promised that he could meet their needs.

        Hyatt states that Agoh attended such a meeting with Trent and Thiem on January 20, 2011.  At that time he was responsible for upgrading the hotel's existing T1 lines to DSI and was working with vendor Computer Sciences Corporation ("CSC") on the project.  As it happened, the hotel's computer system was down longer than expected because it was incorrectly configured.  Thiem expressed frustration with Agoh's work.  Because the performance Improvement Plan was to end on February 7, 2011, during the week of January 24, 2011 Thiem, Trent, and Neumann met to discuss Plaintiff's progress and determined that he had not substantially improved and had not met many of the audit action issues, so they decided to terminate him.  They consulted with Lumpkin, who agreed with the termination.  Plaintiff was scheduled to meet with them at 6:00 p.m. on January 31, 2011, but he informed them that he could not come because a lunch-time doctor's appointment took longer than expected.  Thiem reset the meeting for the next Tuesday in the Human Resources office.  She also sent an email to

CSC in Chicago asking to have Plaintiff's access to network and email eliminated because Hyatt intended to discharge him.  As MIS Manager, Agoh stated in his deposition that he received a copy of that message and forwarded it to his personal email.

Believing that he was terminated, Plaintiff did not return to Hyatt after the January 21, 2011 meeting.  Nor did he call anyone at Hyatt to talk about the email.  Neumann left several voicemails for him but he did not respond.  Therefore Neumann sent him a letter on February 4, 2011 stating that Hyatt would accept his resignation as voluntary.  Plaintiff did meet with Neumann to return his keys and cell phone.

Hyatt states that the decision to terminate Agoh was made by Trent (then 63 years old), Neumann (then 47 years old), and Thiem (then 41 years old) in consultation with William Lumpkin ("Lumpkin")(then 51 years old).  Lumpkin is Black, and all the managers involved in the termination decision were over 40 years old at the time of the discharge.  When decision makers are in the same protected class as the plaintiff, there is a presumption that unlawful discrimination is not a factor in the discharge.  *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 1002 (5th Cir. 1992)("[W]hen decision makers are all of the same protected class as the discharged employee, it is similarly less likely that unlawful discrimination was the reason for the discharge."), *cert. denied*, 502 U.S. 868 (1991).[15]

---

[15] *See also Coggins v. Gov't of D.C.*, 1999 WL 94655, at *4 (4th Cir. Feb. 19, 1999)("The fact that both Krull and Gibbons, first

Agoh filed a charge of discrimination with the EEOC on
September 7, 2011.  Agoh Dep., Ex. B, Ex. 8.  It stated that the
earliest and latest acts of discrimination occurred on January 31,
2011.  Since Plaintiff's discharge, Plaintiff has not been treated
for anxiety, depression or any mental illness.  Agoh Dep., Ex. B,
at 26-27.  After leaving Hyatt, Agoh went to Nigeria where he has
spent 10-11 months.  *Id.* at 32.  Ultimately he stopped seeking
employment in the middle of 2012 because he found it "very
frustrating."  *Id.* at 166-67.

Hyatt represents that Plaintiff's theory is that MIS
Managers at other Hyatt hotels had more resources for their work
than he did.  Hyatt insists that Plaintiff has no evidence that
other managers had similar performance problems or were given more
resources than he was or that Hyatt did not genuinely believe that
Plaintiff's job performance was inadequate.  Nor does he have any
evidence that anyone involved in the decision to discharge him was
motivated by race, age, or other illegal consideration.

Hyatt argues that for varying reasons each of Agoh's
claims fails and that the Court should grant Hyatt's motion for
summary judgment.

With regard to Plaintiff's ADEA and Title VII claims,
Hyatt contends first that Plaintiff has no evidence to raise a

---

and third in Coggins' chain-of-command, are both Caucasian makes
any anti-Caucasian bias unlikely."); *Elrod v. Sears, Roebuck and
Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991)("[I]t is difficult for
a plaintiff to establish discrimination when the allegedly
discriminatory decision-makers are within the same protected class
as the plaintiff.").

genuine issue of fact on the causation element of a *prima facie* case of age or race discrimination. Although Agoh alleges that Espinelli asked Agoh about retirement plans and possibly leaving to work for a vendor, Espinelli retired long before Plaintiff was terminated and was not involved in that termination. Thus Espinelli's comment is a "stray" remark. Plaintiff concedes that the managers who were actually involved in the decision in 2011 never said anything racially offensive. Agoh Dep., Ex. B at 72:8-13. *See Reed*, 701 F.3d at 441 (for comment to be evidence of discriminatory treatment it must be "made by a person primarily responsible for the adverse employment action or by a person with influence or leverage over the formal decisionmaker."). Agoh overheard Thiem say that Gwen Lewis, an laundry manager, was ten years overdue for retirement (*id.* at 72)[16] and that Thiem, herself, did not want to work at the Hyatt over the age of 45 (*id.* at 67-68). He therefore concluded that Thiem might be biased based on age. Agoh also overheard Trent comment that many of the employees at CSC twenty years ago are now gone (*id.* at 66) and viewed the remark about retirement as ageist (*id.* at 65, 161). Plaintiff also claims that Trent said he wanted to clean up the Rooms Department; Agoh interpreted that remark to be racially discriminatory because the Director of Rooms Bob West and his assistant, Oneill Williams, were Black. Hyatt states that West was terminated for poor performance, but that Williams was not.

---

[16] Hyatt notes that Lewis is still employed at Hyatt. Ex. C (Declaration of Neumann) at ¶ 14.

Decl. of Neumann, Ex. C at ¶ 14. Hyatt contends that these comments could "reasonably be interpreted as [some]thing other than as a reflection of bias and therefore [do] not constitute direct evidence of age discrimination." *Powell v. Dallas Morning News, LP*, 776 F. Supp. 2d 240, 270 (N.D. Tex. 2011). *See also Medina v. Ramsey Steel Co.*, 238 F.3d 674, 683 (5th Cir. 2001)(where a remark is capable of both a discriminatory and a benign inference, in the summary judgment context the inference must be drawn in favor of the nonmovant). Both Thiem (then 41 years old) and Trent (then 63 years old) were over forty years of age when they made these remarks. Hyatt maintains these comments are too innocuous to infer discriminatory intent, and there is no evidence connecting any of them in time or circumstance to the 2011 decision to discharge Plaintiff. Plaintiff fails to show that these vague remarks were proximate in time to the employment decision or related to it. They do not refer to Plaintiff's age or race.

Second, Agoh also has no evidence that similarly situated Information Systems Managers at other Hyatt hotels who were outside Plaintiff's protected classes were treated more favorably.

Moreover Hyatt has articulated legitimate non-discriminatory reasons for its discharge of Plaintiff: continuing deficiencies in his job performance, loss of confidence in Plaintiff's ability to competently perform his job requirements, and Plaintiff's absences from performance review meetings. Hyatt

maintains Agoh had persistent communications issues with other departments, as indicated, before he was put on the Performance Improvement Plan and that Agoh failed to show a diligent effort to make his Performance Improvement Plan succeed. *See Cramer v. NEC Corp. of Am.*, 496 Fed. Appx. 461, 466 (5th Cir. 2012)("The relevant inquiry is not whether [the employer's] assessment of [the employee] was accurate because 'even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason.'"); *Arey v. Watkins*, 385 Fed. Appx. 401, 403-04 (5th Cir. July 14, 2010), *citing Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404-09 (5th Cir. 1999)(stating "the real issue is 'whether [the employer's] *perception* of [the employee's] performance, accurate or not, was the real reason for [his or] her termination."); *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)(holding that "even an incorrect belief that an employee's performance is inadequate" can be a legitimate reason for an adverse employment action); *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007)("Our job as a reviewing court conducting a pretext analysis is not to engage in second-guessing of an employer's business decisions.  Our anti-discrimination laws do not require an employer to make proper decisions, only non-retaliatory ones."); *Guthrie v. Tifco Industries*, 941 F.2d 374, 378 (5th Cir. 1991)( plaintiff is "required to show that these [articulated] reasons were not legitimate but were pretext to obscure discrimination").  Hyatt insists that Agoh cannot show that its

reasons for terminating him were pretextual and that its real reason was based on race or age.

Furthermore, insists Hyatt, Plaintiff's TCHRA claims fail because Plaintiff did not file a charge of discrimination with the Texas Workforce Commission Civil Rights Division within 180 days after he was discharged, so the Court lacks subject matter jurisdiction. Tex. Labor Code § 21.202; *Tex. Dep't of Pub. Safety v. Alexander*, 300 S.W. 3d 62, 70 (Tex. App.--Austin 2009, rev. denied)(timely filing of an administrative complaint within 180 days of the alleged discriminatory act is both mandatory and a jurisdictional prerequisite to filing suit). Plaintiff alleges that the earliest act of discrimination was January 20, 2011, and Plaintiff did not file his Charge of Discrimination until September 7, 2011, well beyond the 180-day deadline. Even if he had, as with the Title VII and ADEA claims, he has no evidence that similarly situated Information Systems Managers at Hyatt hotels who are outside the protected classes were treated more favorably, and, as noted, Hyatt has a legitimate nondiscriminatory reason for discharging Agoh.

To state a claim under § 1983, the alleged wrongful conduct must involve state action. *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiff does not allege that Hyatt is an entity of government or otherwise engaged in state action or allege any facts showing it acted under color of law. Agoh's claims under § 1983 fail because Hyatt is not a "state actor," there is no

evidence of state action, and Hyatt is not a proper party to the § 1983 claim.

Section 1985 does not create any rights, but "is a purely remedial statute providing a civil cause of action when some otherwise defined federal right--the equal protection of the laws or equal privileges and immunities under the laws--is breached by a conspiracy in the manner defined by the statute." *Great American Federal Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 376 (1979). There is no evidence that Hyatt breached a federal right for which Agoh has no other remedy. Agoh's § 1985(c) claim also fails because Hyatt cannot conspire with itself. *Hilliard*, 30 F.3d at 653 ("It is a long-standing rule in this circuit that a corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agents are the acts of the corporation."). Agoh alleges that Linville, a Hyatt employee, was the conspirator. Thus this claim should be dismissed.

Finally Hyatt has raised an affirmative defense of failure to mitigate damages based on Agoh's admission that he left the United States for several months after he was terminated and did not participate in the job market. Hyatt contends that because Plaintiff took himself out of the workforce, i.e., because he caused his own financial loss, he is barred from seeking damages for economic loss. "[T]he raison d'etre of a back pay award is to compensate victims of discrimination for economic loss, not to punish the discriminating employer or insure future

compliance." *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 253 (5th Cir. 1974).  "[B]ack pay is not a penalty imposed as a sanction for moral turpitude; it is compensation for tangible economic loss resulting from an unlawful employment practice." *Id.*  "Because an award of back pay is an equitable remedy designed to make the injured party whole, we are persuaded that an injured party has a duty under both § 1981 and Title VII to use reasonable diligence to attain substantially similar employment and, thereby, mitigate damages." *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 935 (5th Cir. 1996).  By his own admission, Agoh has failed to mitigate his damages.

Moreover, although Title VII provides that a prevailing plaintiff may recover compensatory and punitive damages, 42 U.S.C. § 1981a(a)(1) and (b)(3), including future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, Plaintiff has no evidence to support an award of compensatory damages.  He has failed to designate an expert witness.  More significant, during his deposition he testified that he had never taken medication or been treated for or received counseling for anxiety, depression, or any mental health issues.  Ex. B at 26-27.

### Plaintiff's Response (#14)

Plaintiff concedes the untimeliness of his filing  his charge with the Texas Workforce Commission.

He further states that his references to 42 U.S.C. § 1983 were "mistaken" and that he meant to refer to 42 U.S.C. §

1981.[17]  He charges that because Defendant never raised the issue
on a Rule 12(b)(6) motion, Defendant waived any objection to this
mistaken reference.  He also attaches his own affidavit as summary
judgment evidence "to refute mos[t] of the factual assertions " in
Thiem's, Naumann's, and Lumpkin's affidavits submitted by Hyatt.
He also provides copies of emails between Hyatt employees.
Magistrate Judge Frances Stacy overruled Hyatt's objections to
this affidavit and found that the parts to which Hyatt objected
were based on Agoh's personal knowledge of what he experienced
during his employment by Hyatt and were appropriate for Rule 56(e)
affidavit.  She did not, however, address whether it was competent
evidence, specifically whether its conclusory statements
unsupported by evidence would preclude summary judgment.

### Hyatt's Reply (#15)

Noting that Plaintiff's response is untimely despite
extensions granted by the Court and that Plaintiff does not
address the eight separate grounds Hyatt argued for summary
judgment, Hyatt asserts that summary judgment for Hyatt is still
warranted.  Plaintiff fails to identify any evidence to establish
a *prima facie* case or to dispute its legitimate, nondiscriminatory
reasons for terminating him, i.e., Plaintiff's persistent

---

[17] Even if Plaintiff had properly and timely pleaded a claim
under § 1981, this Court notes that the Fifth Circuit reviews
employment discrimination claims under § 1981 by applying the same
evidentiary framework it uses for claims under Title VII.
*Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309,
311 (5th Cir. 1999); *Turner v. Kansas City Southern Ry. Co.*, 675
F.3d 887, 891 n.2 (5th Cir. 2012); *Glaskox v. Harris County, Texas*,
No. 12-20678, 2013 WL 3957767, at *2 (5th Cir. Aug. 2, 2013).

performance issues, Hyatt's loss of confidence in his ability to do his job during the performance improvement process, and his absences from performance review meetings.  Nor has he presented any evidence suggesting age or race bias or creation of a pretextual reason for his discharge.

Regarding Agoh's argument that Hyatt waived its right to contest the incorrect reference to § 1983 when Plaintiff meant § 1981, Hyatt points out that it raised the defenses to § 1983 and § 1985 in its Answer (#3 at ¶ 45), that Plaintiff has been on notice for over a year that he expressly pleaded Sections 1983 and 1985, but did not  move to amend, and that he cannot come in before trial and claim he made a mistake and assert a vastly different claim under Section 1981.  *See Desperado Motor Racing & Motorcycles, Inc. v. Robinson* , No. Civ. H-09-1574, 2010 WL 2757523, at *3 (S.D. Tex. July 13, 2010)(where parties claims were "based on a defense they properly asserted in their Answer, Robinson's waiver contention is unavailing"); *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 772 (S.D. Tex. 2010)(under Rule 12(b), "'No defense is waived by joining it with one or more other defenses or objections in a responsive pleading,'" and  Rule 12(I) states, "'If a party so moves, any defense listed in Rule 12(b)(1)-(7)-- whether made in a pleading or by motion . . . must be heard and decided before trial unless the court orders a deferral until trial . . . . Because the . . . motion to dismiss is based on a defense [Defendants] raised originally in their answers, M-I's

waiver argument fails.")(*citing Desperado Motor Racing*).  The
Court agrees that the waiver argument fails.

### Court's Decision

The Court agrees with Hyatt, and as conceded by
Plaintiff, that Plaintiff failed to file his TCHRA claims timely
with the TWC within 180 days of either his January 20, 2011
meeting with the managers who decided to discharge him and his
discharge on February 4, 2012, regardless of which was the date
his claim accrued.  Therefore the Court dismisses the age and race
discrimination claims under the TCHRA without prejudice for lack
of subject matter jurisdiction.

The Court further agrees that as a matter of law
Plaintiff has failed to state a claim against Hyatt under § 1983
because he fails to allege, no less prove, any state action.
Plaintiff also cannot sue Hyatt under § 1985(c) as a matter of law
because a corporation cannot conspire with itself, and the acts of
its agents are deemed the actions of the corporation.  *Hilliard*,
30 F.3d at 653.  Thus the Court dismisses these claims with
prejudice.

The Court further dismisses Plaintiff's claims under §
1981 with prejudice as untimely and asserted without leave of
court.

With regard to the race discrimination claims under
Title VII and age discrimination claims under the ADEA, Plaintiff
fails to make a *prima facie* case because his allegations are
conclusory, with no supporting facts, and he presents no probative

- 43 -

evidence to support them.  He claims his replacements were not
black, not of African descent, younger than he, less experienced
and qualified,[18] and some not members of his protected class.  Yet
he fails to identify a single one or present proof that any one
actually met these criteria.  Similarly, he vaguely and
conclusorily asserts that he was treated differently from other
Hyatt employees who were not African American or who were
substantially or even a little younger than he, but again does not
name a single individual or provide any supporting evidence that

---

[18] The Court notes that Plaintiff has not provided evidence
of his own qualifications for his position, no less shown that any
of his unidentified replacements was less qualified.  Although in
a case addressing discrimination in hiring but would be relevant
to the discharge and replacement of an employee in proving
pretext, the Fifth Circuit has opined that

> a plaintiff may survive summary judgment and
> take his case to the jury by providing
> evidence that he was "clearly better
> qualified" than the employee selected for the
> position at issue.  The single question for
> the trier of fact is whether the employer's
> selection of a particular applicant over the
> plaintiff was motivated by discrimination,
> and evidence of the plaintiff's superior
> qualification is thus probative of pretext.
> However, the bar is set high for this kind of
> evidence of discrimination because
> differences in qualifications are generally
> not probative evidence of discrimination
> unless those disparities are of such weight
> and significance that no reasonable person,
> in the exercise of impartial judgment, could
> have chosen the candidate selected over the
> plaintiff for the job in question.

*Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343 (5th Cir.
2001), *abrogated on other grounds*, *National R.R. Passenger Corp.
v. Morgan*, 536 U.S. 101, 105 (2002)(holding that Title VII does
not include a continuing violation doctrine).

he met these criteria.  The only "evidence" Plaintiff presents is his own affidavit, with Hyatt employee emails attached that do not support his claim of discrimination based on race or age. The Fifth Circuit has "held that the subjective belief of a plaintiff is not sufficient to establish a *prima facie* case of discrimination under Title VII [or] the ADEA." *Vasquez*, 2013 WL 6670973 at *2, *citing Baltazor*, 162 F.3d at 377 n.11, *citing Travis v. Board of Regents of the Univ. of Texas Sys.*, 122 F.3d 259, 266 (5th Cir. 1997).  Plaintiff's affidavit is also vague and conclusory, unsupported by evidence, and thus insufficient for a jury to reasonably find for Agoh, and inadequate to preclude summary judgment.

As for being treated differently from other Hyatt MIS Managers outside the protected classes of race and age, Plaintiff has failed proffer any evidence to show who they were and that they were similarly situated and in nearly identical circumstances to him, which would include that they worked in the same division or hotel, that they had the same supervisor, the same work responsibilities, the same capabilities, the same performance issues, and committed the same violations.  As pointed out by Hyatt, during his deposition Agoh testified that he did not know of any other MIS managers who were placed on a performance improvement plan or who had performance issues similar to those stated in his performance improvement plan. #7, Ex. B, 162:1-7.

As for Agoh's contention that he was wrongfully dismissed because he was qualified and did perform his job

properly or because others were responsible for the computer problems, "Title VII . . . do[es] not protect against unfair business decisions, only against decisions motivated by unlawful animus." *Turner v. Texas Instruments, Inc.*, 555 F.2d 1251, 1257 (5th Cir. 1997), *overruled on other grounds*, *Burdine v. Tex. Dept. of Community Affairs*, 647 F.2d 513, 514 n.3 (5th Cir. 1981).

Nor does Agoh present competent evidence in his conclusory affidavit to show that the nondiscriminatory reasons provided by Hyatt for his termination (repeated performance deficiencies and failure to attend performance review meetings) were false. "Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext." *Lemaire*, 480 F.3d at 391. Agoh "must rebut each non-discriminatory . . . reason articulated by the employer." *McCoy*, 492 F.3d at 557.

Most significantly, Plaintiff fails to show that the real reason or among the reasons for his discharge were his race and/or his age. Agoh claims that General Manager Steve Trent stated that people in CSC twenty years ago were no longer there is not a direct and unambiguously discriminatory comment to support an ADEA claim and is not related to the employment decision at issue. *Moss v. BMC Software, Inc.*, 610 F.3d 917, 929 (5th Cir. 2010)(To demonstrate an employer's discriminatory intent, a comment must be "direct and unambiguous, allowing a reasonable jury to conclude without inferences or presumptions that age was an impermissible factor in the decision to terminate the

employee."). Nor is the allegedly age discriminatory remark that plaintiff should retire so younger employees could be hired purportedly made by Trent and Espinelli. Initially in his complaint Agoh alleged that **at different times** General Manager Steve Trent and Controller Rico Espinelli commented to Plaintiff that he should retire so that younger employees could be hired. As pointed out by Hyatt, Espinelli retired and left Hyatt in 2009 and had no role in or influence over Agoh's termination.  That Trent purportedly made the exact same comment, and that only after Hyatt filed its motion for summary judgment did Agoh assert that Trent made the comment at the January 20[th] meeting, raises an issue of credibility.  Even if made at the meeting to discuss Plaintiff's inadequate work performance, that remark hardly constitutes sufficient evidence on which the jury could reasonably find for the plaintiff; instead it seems to be a mere scintilla of evidence, not significantly probative of age discrimination.  As noted, the mangers involved in the termination decision were all in the protected group, some substantially older than Plaintiff.[19] *Crisco v. Lockheed Martin Corp.*, No. 4:10-CV-418-A, 2011 U.S. Dist. LEXIS 32925, AT *8 (N.D. Tex. Mar. 29, 2011)("[T]he individuals in charge of making the decision . . . were much older than plaintiff.  If anything, the circumstances suggest that defendant's decision was not based on age.").  Plaintiff has

---

[19] From Agoh's testimony during his deposition, #7, Ex. B, 18:25-19:19), it appears that in 2011 Agoh was approximately 51 years old.

conceded that none of the managers involved in his termination made any racially discriminatory comments.

Accordingly, for the reasons stated above, the Court

ORDERS that Plaintiff's age and race discrimination claims under the TCHRA are DISMISSED without prejudice for lack of subject matter jurisdiction.  The Court further

ORDERS that Hyatt's motion for summary judgment is GRANTED as to Plaintiff's claims under Title VII, the ADEA, and 42 U.S.C. §§ 1983, 1985(c), and 1981.

**SIGNED** at Houston, Texas, this  10th  day of  January ,
2014.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE